595 A.2d 758

**K–MART CORPORATION, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (DICK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 12, 1991.
Decided July 22, 1991.

Michael J. Seymour, Pittsburgh, for petitioner.

Martin Singer, Pittsburgh, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Employer, K–Mart Corporation, petitions this Court for review of an order of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's decision awarding total disability benefits to Claimant, Rita Dick. Following a thorough review of the record in this matter, we affirm the order of the Board.

Claimant worked for Employer as a bookkeeper from July of 1977 through April 19, 1985. Claimant also worked one additional day for Employer outside of this time period,

on April 15, 1986. In her claim petition, Claimant described her injury or disease as a total and cumulative exposure to deleterious dusts at her workplace which resulted in an aggravation of a pre-existing allergic bronchopulmonary aspergillus, and indicated that the date of her injury was April 19, 1985. Claimant testified before the referee on June 3, 1986, and offered the report and deposition of her medical expert, Dr. James H. Dauber. Employer presented testimony of three witnesses, and offered the report and deposition of its medical expert, Dr. Murray Sachs.

The referee indicated that she accepted the testimony of Claimant and the testimony of Claimant's treating physician, Dr. Dauber. *See* Finding of Fact No. 11. This evidence served as the basis for the referee's conclusion that Claimant had sustained her burden of proving that she was totally disabled from pulmonary fibrosis caused by her hypersensitive reaction to an aspergillus fungus found in her workplace. The referee's decision was affirmed by the Board. Employer now petitions this Court for review of the Board's order.[1]

Employer contends that the record does not contain substantial evidence to support the referee's finding that Claimant contracted pulmonary fibrosis as a result of a hypersensitive reaction to aspergillus fumigatus, or her determination that such a condition is an occupational disease within the meaning of The Pennsylvania Workmen's Compensation Act (Act).[2] Employer also alleges that Claimant did not prove by unequivocal medical testimony that the conditions at Claimant's workplace were a substantial contributing factor in causing her disability. In order to address these issues, we must examine the testimony of Claimant and of Dr. Dauber.

1. Employer indicates, at page 5 of its brief, that Claimant died on October 10, 1986, and that there is a fatal claim petition pending before the referee, the outcome of which will be controlled by our decision here.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

Claimant testified before the referee that her work for Employer was performed in a room approximately 12 × 8 feet, which had low ceilings, no windows and was poorly ventilated. (N.T. pp. 7–11). Claimant also testified that the air conditioning coming into that area blew directly down on her as she sat at her desk. (N.T. pp. 10–11). Claimant described her work area as dirty and dusty, and said that her office was not regularly cleaned. (N.T. pp. 11–12 and 14). Claimant indicated that this problem worsened after carpet was installed in her work area, because the carpeting held the dirt and dust. (N.T. p. 13).

At his deposition, Dr. Dauber testified that Claimant indicated to him that she developed respiratory symptoms for several years in late winter and spring, which symptoms occurred at the time the air conditioning unit in her office was activated after having been off all winter. (Deposition, p. 5). Dr. Dauber testified that he performed tests on Claimant in September of 1985, among which were a fiber-optic bronchoscopy and bronchoalveolar lavage. (*Id.* p. 7). Reviewing the results of these tests, Dr. Dauber made a provisional diagnosis that Claimant suffered from pulmonary fibrosis attributed to a hypersensitivity disease. These tests also indicated to the doctor that Claimant had antibodies to a fungus called aspergillus fumigatus, which he described as a common mold that grows both indoors and outdoors. (*Id.* p. 11). The doctor also testified that lab tests were done on a sample of dust supplied to the doctor by Claimant's husband, which he purportedly obtained from the filter in the air conditioner at Claimant's office, and that the lab report indicated that aspergillus fumigatus was present in the sample. (*Id.* at 13).

■ Claimant's counsel then asked Dr. Dauber the following questions:

Q Doctor, based on your care and treatment of the patient, the history you obtained, in view of the test results, were you able to arrive at an opinion within a reasonable degree of medical certainty as to a diagnosis of [Claimant's] pulmonary condition?

A Yes. I think she has pulmonary fibrosis that was caused by hypersensitivity reaction to aspergillus.

Q Doctor, based again on your care and treatment of the patient, the history that you obtained, in view of the test results, were you able to arrive at an opinion within a reasonable degree of medical certainty as to the cause of this pulmonary diagnosis?

A Yes. I think the main contributing factor to this was the hypersensitivity reaction to the aspergillus.

Q Based on your review of the results, where did the aspergillus come from?

A Aspergillus is a fungus that ... grows both indoors and outdoors, but it is well reported to contaminate air conditioning systems. I'd think, in this situation, that the fungus grew during the time when the air conditioning system was not in operation and that when it was then turned on, the mold that was growing in the dust was dispersed through the air.

*Id.* at pp. 14–15. We conclude that this evidence, if believed, constitutes substantial evidence to support the referee's finding that Claimant contracted pulmonary fibrosis as a result of a hypersensitive reaction to aspergillus fumigatus.

█ Employer's next issue is a general allegation that Claimant failed to satisfy her burden of proof to support an award of benefits under Section 108(n) of the Act, 77 P.S. § 27.1(n), relating to occupational diseases. In order to establish that a disease is an occupational disease under Section 108(n), Claimant needed to establish that her disease (1) was one to which she was exposed by reason of her employment, (2) was causally related to her employment, and (3) that the incidence of the disease is substantially greater in that occupation than in the general population.

A further reading of Dr. Dauber's deposition testimony reveals the following relevant exchanges:

Q Doctor, are there any studies of any epidemics of this type of pneumonitis in office workers?

A Yes. There are several articles in the medical literature reporting that epidemics of hypersensitivity pneumonitis have broken out in office workers, and the offending agent was a fungus that was contaminating the air conditioning system in the building where they worked.

\* \* \* \* \* \*

Q Doctor, based on your care and treatment of the patient, the history you obtained, your medical experience, and the test results, were you able to arrive at an opinion within a reasonable degree of medical certainty as to whether or not [Claimant's] total and cumulative exposure to this aspergillus fumigatus at her work setting was a substantial contributing factor in bringing about the pulmonary diagnosis as you've mentioned earlier?
A Yes, it was.

Q Doctor, ... were you able to arrive at an opinion within a reasonable degree of medical certainty as to whether or not the hazard exists for individuals like [Claimant] who work in office settings with air conditioning units that have this type of fungus growing of developing the type of pulmonary condition, the diagnosis that you mentioned earlier.
A Yes. There's a definite risk.

Q Doctor, ... were you able to arrive at an opinion within a reasonable degree of medical certainty as to whether or not the incidence of this pulmonary diagnosis is substantially greater for workers such as [Claimant] who are exposed to these dusts than it would be in the general population?
A I believe that is true.

*Id.* at pp. 18–20. We find that this evidence, along with the testimony of Claimant and Dr. Dauber cited earlier, constitutes sufficient evidence to satisfy Claimant's burden of proving that she suffered from an occupational disease within the meaning of Section 108(n) of the Act.

 Finally, Employer alleges that Dr. Dauber's testimony on causation was not unequivocal because, in response to

questions on cross-examination, the doctor used phrases like "may have," "strong possibility" and "very good possibility." We have stated that a question of whether medical testimony is equivocal or not is a question of law, fully reviewable by this Court based on the testimony taken as a whole. *Spotts v. Workmen's Compensation Appeal Board (Superior Tube Company)*, 116 Pa.Commonwealth Ct. 304, 541 A.2d 446 (1988). In this case, we conclude that the testimony of Claimant's medical expert, Dr. Dauber, taken as a whole, is unequivocal medical testimony indicating that the total cumulative exposure of Claimant to aspergillus fumigatus at her workplace was a substantial contributing factor in causing her disability.

Consequently, having found no merit to any of Employer's allegations of error, we will affirm the order of the Board.

## ORDER

AND NOW, July 22, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.