**James DILLON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 8, 2004.

Decided July 13, 2004.

---

Robert D. Erickson, Philadelphia, for petitioner.

Leah Cilo, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY Judge COHN.

James Dillon (Claimant) petitions for review of the June 6, 2003, order of the Workers' Compensation Appeal Board (Board), which affirmed the decision and order of a workers' compensation judge (WCJ) denying Claimant's claim petition. Claimant raises four issues for our review: (1) whether the WCJ improperly required proof of *both* stress and long-term exposure when he applied the definition of "occupational disease" found in Section 108(*o*) of the Workers' Compensation Act (Act)[1]; (2) whether the City of Philadelphia (Employer) rebutted the presumption that Claimant's heart disease was work-related; (3) whether there was substantial evidence to support the WCJ's credibility findings; and (4) whether the WCJ issued a reasoned decision. For the reasons that follow, we affirm.

The following findings were made by the WCJ. Claimant began working for Employer in 1977. On November 10, 1999, he filed a claim petition alleging that he suffered an injury in the nature of heart disease due to occupational exposures to harmful substances while in the course of his employment. Employer denied the allegations, and the case was assigned to a WCJ.

Claimant worked in various fire companies throughout his twenty-one year career as a firefighter, but was never treated at a fire scene for smoke inhalation, and never had to take oxygen. While working in his position for Employer, Claimant wore a suit with breathing apparatus.

Claimant became aware of his heart problem when his family doctor referred him to a cardiologist following a routine physical in 1998. He described his subsequent course of treatment for coronary disease, which included, *inter alia*, two catheterizations and an angioplasty in 1999.[2] Claimant, who is six-feet, six-inches tall and weighs 280 pounds, initially denied, on cross-examination, expressing concern to a doctor about his weight; however, after reviewing medical records on redirect, Claimant recalled seeing a doctor in 1997 because his weight had gone up to 293 pounds. (N.T., Hearing October 19, 2000, pp. 35, 40.) Claimant does not smoke, and denied being treated for high blood pressure or high cholesterol. With respect to his family medical history, Claimant testified that his mother was treated for an electrolyte problem and died from a heart attack while in her sixties, and his seventy-three year old father had recently had a heart attack.

Claimant also presented the deposition testimony of Gaetano J. Capone, M.D., who is board-certified in internal medicine with a subspecialty in cardiology. Dr. Capone first treated Claimant in July 1999.

---

**1.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 27.1(*o*).

**2.** Claimant has undergone several additional procedures over the years, including additional catheterizations and the insertion of a stent. (Dep., Dr. Capone, pp. 15–18).

Dr. Capone testified that Claimant's medical records indicated that Claimant had suffered a prior "silent" heart attack on or before 1995. Dr. Capone diagnosed Claimant as suffering from aggressive coronary artery disease, pulmonary hypertension, hypercholesterolemia and probable sleep apnea. Dr. Capone opined that Claimant was totally disabled from working as a firefighter, and he believed that Claimant's work was a substantial contributing factor in the development of Claimant's coronary disease.[3]

Employer offered the deposition testimony of Norman Makous, M.D., who is board-certified in internal medicine with a subspecialty in cardiovascular disease. Dr. Makous examined Claimant on September 11, 2000, at Employer's request. Dr. Makous testified that he obtained a history from Claimant and reviewed certain medical records,[4] but he acknowledged that he had not reviewed any records of Dr. Capone. Dr. Makous stated that the medical records were consistent with the history Claimant provided, with one exception. While providing his medical history to Dr. Makous, Claimant denied experiencing chest pain; however, Dr. Makous' review of a 1995 cardiac evaluation included in Claimant's medical record indicated that Claimant had complained to a physician of chest pain at that time. (Dep., pp. 23–24.)

Dr. Makous diagnosed Claimant with coronary artery disease treated by angioplasty, and he testified that Claimant was totally disabled from returning to his job

as a firefighter. However, Dr. Makous also testified that Claimant's medical history, not his work as a firefighter, led to the development of Claimant's coronary disease:

> [T]here was no indication that firefighting [sic] contributed to this since [Claimant] had no specific incident to cause him a coronary kind of problem and he was asymptomatic and firefighting [sic] as an occupation has not been proved medically as a risk factor for coronary disease in the way that cigarette smoking, elevated cholesterol, high blood pressure, sugar abnormalities and positive family history have been established over and over again over the past 30 years [as] the reasons for coronary artery atherosclerosis in most people. Firefighting [sic] has not been so established.

(Dep., Dr. Makous, pp. 25–26). Dr. Makous further testified that the fact that Claimant's disease progressed after he stopped fire fighting is proof that these other factors, rather than fire fighting, were the cause of Claimant's coronary disease. He stated that:

> [L]ike with smoking from cigarettes or any other acquired risk factors as soon as they're controlled or eliminated, such as stopping smoking cigarettes, the progression of the coronary disease not only slows down but can actually reverse, and so the very fact that his progression went on after he stopped fire fighting would indicate that the fire fighting was

---

3. Dr. Capone also testified that a family history of heart disease is significant, and that hypertension, high cholesterol and obesity are all risk factors for heart problems. He noted that coronary artery disease can continue to progress even after one of the risk factors is removed.

4. Dr. Makous testified that he reviewed an unsigned summary of Claimant's history, a stress cardiolyte study and exercise test report

from October 1995, a pharmacologic stress test in November 1995, office notes of Dorritt Sterner, M.D., from September 4 and December 13,1998, blood test results from 1998, echocardiogram, x-ray and other test results from January and February 1999, office notes of Robert Schlesinger, M.D., dated December 30, 1998, and a letter from Dr. Schlesinger dated February 11, 1999.

not the cause of his underlying disease and that it was indeed due to these other factors . . . .

(Dep., Dr. Makous, p. 27).

The WCJ rejected Claimant's testimony as not credible, finding that Claimant had not been honest regarding concerns about his weight or with respect to his previous complaints of chest pain. The WCJ accepted the testimony of Dr. Makous as more persuasive than Dr. Capone's testimony, explaining that Dr. Capone did not treat Claimant until several months after his alleged injury, did not ask Claimant pertinent questions concerning his symptoms and did not know Claimant's full medical or work history. The WCJ also found that Dr. Capone's opinion was not persuasive because it was based entirely on the veracity of Claimant's version of events. Based on these credibility determinations, the WCJ concluded that Employer had successfully rebutted the presumption afforded by Section 301(e) of the Act,[5] and that Claimant had failed to meet his burden of proving that he was disabled from coronary artery disease that was causally related to his employment.

Claimant appealed to the Board, arguing that the WCJ's findings were not supported by substantial evidence, the WCJ did not properly apply Section 301(e) of the Act and the WCJ failed to issue a reasoned decision. The Board affirmed the WCJ's decision, and Claimant appealed to this Court.[6]

Claimant argues first that the WCJ improperly required proof of *both* stress *and* long-term exposure when he applied the Act's definition of "occupational disease" to the facts in this case. Claimant contends that the WCJ found Dr. Capone's opinion not credible because the doctor did not address "both possible causes for occupational heart disease under Section 108(*o*)" in finding of fact (FOF) 3(e). (Brief, p. 9.) Claimant explains that "[t]his misinterpretation of the correct legal standard clearly led to a mistaken belief that Dr. Capone 'did not ask the Claimant pertinent questions . . . and did not know the Claimant's full medical or work history.' " *Id.* (citing FOF 7).

Section 108 reads in pertinent part as follows:

The term "occupational disease," as used in the act, shall mean only the following diseases.

. . . .

(*o*) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger *or* by exposure to heat, smoke, fumes or gases, arising directly out of the employment of any such firemen.

77 P.S. § 27.1(*o*) (emphasis added). We agree with Claimant that the use of the word "or" in the definition permits a claim-

---

5. Section 301(e) of the Act, 77 P.S. § 413, states:

**Presumption regarding occupational disease**
If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

6. Our scope of review is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

ant to show alternate causes for his heart or lung disease—that is, to show *either* "extreme over-exertion in times of stress or danger" *or* "exposure to heat, smoke, fumes or gases." *See, e.g., Barckley v. State Employes' Retirement Board,* 129 Pa.Cmwlth. 484, 566 A.2d 343, 345 (1989) (noting that the word "or" is defined as "a disjunctive participle which means one or the other of two propositions; never both"). However, we must disagree with Claimant's contention that the WCJ incorrectly applied the definition of "occupational disease" and required Claimant to prove *both* stress and long-term exposure. While it is true that finding of fact 3 states that Claimant was not under stress in his job, this fact, in and of itself, does not govern the WCJ's determination in this case, and therefore, does not constitute reversible error. Rather, the WCJ's decision indicated that the primary reason he refused Claimant benefits was because he found the testimony of Employer's doctor, concerning Claimant's non-firefighter risk factors for coronary heart disease, more credible and persuasive than that of Claimant's doctor. *See* FOF 5(h), 7. When faced with conflicting medical evidence, a WCJ may freely accept the testimony of one medical witness over another. *City of Wilkes–Barre v. Workmen's Compensation Appeal Board (Zuczek),* 541 Pa. 435, 664 A.2d 90 (1995).

In his second issue, Claimant asserts that Employer did not rebut the presumption that Claimant's heart disease was work-related. Specifically he contends that Dr. Makous rejected any causal relationship between heart disease and long-term exposure to the hazards of fire fighting, despite the statutory presumption in Section 301(e) of the Act, and, therefore, his testimony is incompetent as a matter of law.

Section 301(e) of the Act, entitled "Presumption regarding occupational disease," provides:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. § 413. In effect, this presumption provides a "procedural or evidentiary advantage to a claimant who has established that he has contracted an occupational disease [under Section 108(o) of the Act,] and that the disease was a hazard in his occupation or industry." *City of Wilkes–Barre,* 541 Pa. at 440, 664 A.2d at 92 (1995). However, *the presumption is not conclusive and may be rebutted by substantial, competent evidence. Buchanan v. Workmen's Compensation Appeal Board (City of Philadelphia),* 659 A.2d 54 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied,* 542 Pa. 675, 668 A.2d 1137 (1995).

Here, Claimant was entitled to the evidentiary advantage of the presumption in Section 301(e) because the evidence effectively established that he contracted an occupational disease, as defined in Section 108(o), and that the disease was a hazard in his occupation. To rebut the presumption, Employer presented the deposition testimony of Dr. Makous; Claimant asks that we review the competency of his testimony.

The determination as to whether the testimony of a medical witness is competent is a question of law and is fully reviewable by this Court. *Buchanan.* "Our review must encompass the witness's *entire testimony,* and not merely isolated statements, in reaching our determination." *Id.,* at 56 (emphasis added); *see*

*also Kelley v. Workers' Compensation Appeal Board (City of Wilkes–Barre),* 725 A.2d 232, 235 (Pa.Cmwlth.1999) (stating that "[i]n determining whether testimony of a medical witness is competent to rebut the presumption …, review must encompass the witness' testimony *in toto;* not mere excerpts of the medical witness' testimony"); *City of Wilkes–Barre,* 541 Pa. at 442, 664 A.2d at 93 (acknowledging that "[a]fter reviewing [the doctor's] testimony in its entirety, … we conclude that the lower court disregarded significant portions of the deposition and that the medical testimony was competent.").

■ Dr. Makous' testimony, taken as a whole, shows that he did *not* reject a causal relationship between heart disease and long-term exposure to the hazards of fire fighting, but rather indicates that he finds the existence of positive *medical* risk factors, proven by scientific studies, to be more indicative of causation than the legislative *legal* presumption. For example, Dr. Makous testified that "fire fighting as an occupation has not been proved medically as a risk factor for coronary disease **in the way that** cigarette smoking, elevated cholesterol, high blood pressure, sugar abnormalities and positive family history have been established over and over again for the past 30 years that these are the reasons for coronary artery atherosclerosis in most people." (Dep. at 26) (emphasis added). His use of the phrase, "in the way that," indicates his acknowledgment that the *presumption* exists; however, he believes its use as a risk factor for coronary disease is not as medically compelling. This does not render his expert opinion incompetent.

A careful reading of Dr. Makous' testimony in its entirety shows a consistent and unequivocal opinion based upon medical evidence. Dr. Makous testified that, in his medical opinion, he believed the cause of Claimant's heart problems were underlying *medical* risk factors unrelated to Claimant's fire fighting activities, and the cause of which have been demonstrated by scientific studies. The factors that Dr. Makous relies on are that Claimant's mother died at 63 from a heart attack and his father suffered a heart attack and underwent heart surgery at 72, indicating a genetic predisposition to coronary heart disease (Dep. at 19, 25), and, that Claimant suffers from cholesterol abnormalities, intermittent hypertension, obesity, lack of regular exercise and lives a sedentary lifestyle outside of work. (Dep. at 21–22, 25, 60). Further evidence supporting Dr. Makous' opinion that the underlying risk factors, rather than the fire fighting, are the cause of Claimant's coronary artery disease, is that the disease *continued to progress after Claimant stopped fire fighting,* instead of improving, as would be expected when a person is removed from the alleged cause of his disease. (Dep. at 27).

■ President Judge Colins has cogently noted that the statutory presumption at issue here must be approached with caution. He stated:

This provision provides no presumption for heart diseases having other causes, and it does not establish that [myocardial infarction] or any other heart disease is absolutely caused by physical exertion and smoke inhalation. The presumption does not purport to establish as a matter of law that any disease has a particular etiology in any given instance, much less for all time.

*Creaturo v. Workers' Compensation Appeal Board (Township of Shaler),* 707 A.2d 245, 246 (Pa.Cmwlth.1998). Thus, the presumption at issue here would become conclusive on causation if a physician could not consider other medical factors in opining on the causation of a firefighter's coronary disease. *City of Wilkes–Barre,* 541

Pa. at 448, 664 A.2d at 96. The effect of Dr. Makous' testimony is that, in his opinion, the positive medical factors present *in this case,* which are not related to fire fighting, are evidence of causation, and the WCJ found this testimony sufficient to rebut the presumption. We believe that testimony is competent and, therefore, do not think it error for the WCJ and the Board to rely on it.

■ As his third issue, Claimant asks the Court to determine whether there was substantial evidence to support the WCJ's credibility findings. Claimant argues that the WCJ erred when he found Dr. Capone less credible than Dr. Makous because "Dr. Capone's testimony was unequivocal that Claimant's heart disease was causally related to Claimant's occupational exposures as a firefighter." (Brief, p. 13.) However, Claimant's argument fails because it is within the sole province of the WCJ to make credibility determinations and to resolve conflicts in the evidence. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152 (Pa.Cmwlth.1998); *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703 (Pa. Cmwlth.1995). In addition, it is solely for the WCJ, as factfinder, to determine the weight to give to any evidence. *Hoffmaster.* Accordingly, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* When this Court makes a determination as to whether findings are

supported by substantial evidence in a case where, as here, both parties present evidence, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Id.* at 1155. Because the WCJ's credibility findings are supported by substantial evidence, they will not be disturbed on appeal.

Further, we disagree with Claimant's final argument, that the WCJ's finding that Claimant was not credible is inconsistent with the finding that Employer's medical doctor, Dr. Makous, was credible. A careful reading of Dr. Makous' testimony discloses that he based his opinion not only on a medical history as provided by Claimant, but also on an extensive review of Claimant's medical records. Further, at each instance where an inconsistency between his conclusion and Claimant's testimony became evident, Dr. Makous explained the basis for reaching his different conclusion. It is clear from the record and from the WCJ's findings that Dr. Makous came to his conclusions *despite* Claimant's *contrary* recounting of his medical history.

Finally, Claimant asks us to determine whether the WCJ issued a reasoned decision. He argues that, because the WCJ adopted Employer's proposed findings and conclusions verbatim, the WCJ did not issue a "reasoned decision" as required by Section 422 of the Act, 77 P.S. § 834.[7]

---

7. Section 422(a) provides in pertinent part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and

state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejec-

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003). Here, the WCJ's findings sufficiently demonstrate that he fulfilled his factfinding role. The findings also allow adequate appellate review because the WCJ clearly indicated which evidence he accepted and rejected and the reasons he did so. In addition, as we have already determined, the findings are based on substantial evidence of record. Furthermore, contrary to Claimant's contention, a WCJ "*may* adopt, verbatim, findings of fact submitted by a party so long as substantial evidence in the record supports the findings." *County of Delaware v. Workmen's Compensation Appeal Board (Thomas)*, 168 Pa.Cmwlth.231, 649 A.2d 491, 495 (1994) (emphasis added), *petition for allowance of appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995).

Accordingly, for these reasons, we affirm the decision of the Board.

### ORDER

**NOW,** July 13, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

Because this court has previously held that testimony by a medical witness who refuses to acknowledge the causal presumption afforded by section 301(e) of the Workers' Compensation Act (Act) [1] is not competent, I respectfully dissent.

James Dillon (Claimant) worked as a firefighter for the City of Philadelphia (Employer) for more than twenty-one years. Claimant filed a claim petition alleging an injury in the nature of heart disease caused by exposure to harmful substances in the course of his employment. Employer denied the allegations, and the case was assigned to a WCJ. Following hearings, the WCJ relied on the testimony of Employer's medical expert, Norman Makous, M.D., to conclude that Employer successfully rebutted the presumption of causation afforded by section 301(e) of the Act [2] and that Claimant failed to meet his burden of proof.

The majority concludes that Dr. Makous' testimony was competent and sufficient to rebut the statutory presumption of causation in this case. However, contrary to the majority's view that Dr. Makous acknowledged the statutory presumption, the record reflects that Dr. Makous re-

---

tion. The adjudication shall provide the basis for meaningful appellate review.
77 P.S. § 834.

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 413

2. Section 301(e) of the Act states:
   **Presumption regarding occupational disease**
   If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.
   77 P.S. § 413. Section 108(*o*) of the Act, 77 P.S. 27.1, provides that the term "occupational disease" includes diseases of the heart and lungs resulting in disability after four or more years of service in fire fighting, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gases, arising in the course of the firefighter's employment.

fused to consider the existence of any causal relationship between long-term exposure to the hazards of firefighting and heart disease. In fact, Dr. Makous emphatically rejected the possibility of such a causal relationship.

Dr. Makous testified that:

there was no indication that firefighting contributed to this since [Claimant] had no specific incident to cause him a coronary kind of problem and he was asymptomatic and firefighting as an occupation has not been proved medically as a risk factor for coronary disease in the way that cigarette smoking, elevated cholesterol, high blood pressure, sugar abnormalities and positive family history have been established over and over again over the past 30 years [as] the reasons for coronary artery atherosclerosis in most people. Firefighting has not been so established.

(R.R. at 140a–41a.)

Dr. Makous then stated that:

**Even if in time it is proven, which so far as I said it has not been proven that firefighting is a risk factor for coronary artery disease,** then one would also have to assume that like with smoking from cigarettes or any other acquired risk factors as soon as they're controlled or eliminated, such as stopping smoking cigarettes, the progression of the coronary disease not only slows down but can actually reverse . . . .

(R.R. at 142a (emphasis added)).

On cross-examination, Dr. Makous was asked:

Q: [P]utting aside an acute event such as a myocardial infarction, Doctor, **would it be fair to say that you do not accept the causal relationship between long-term exposures as a firefighter to heat, smoke, gases and fumes and the development of coro-** nary artery disease; would that be a fair statement?

A: **I do not accept it because it is unproved.**

Q: In your opinion?

A: Not in my opinion. There's nothing in the literature that supports to the same degree [sic] as known risk factors. I have records . . . and I can give you the specific reference if you want it, and this also states that **there is no evidence that firefighting increases the cardiac mortality and it's unproved.** [I]t may be proven in time, but **at the moment nobody has done a study that really demonstrates that there is a connection.**

From a medical point of view, there is no strong medical evidence of an association and when there has [sic] been studies of this done, they find that firefighters have the same risks . . . .

**In other words, the risk factors of firefighters is [sic] the same as it is for every other individual** and they have no extraordinary type of problem in a general way.

Now, there are specific instances of an acute episode like you excluded in your question.

Q: Well, Doctor, you always exclude it when you testify?

A: That's right. And it's quite possible that there are some exposures that will aggravate that they get intermittently depending on the kind of chemical fumes, but this has not been proved.

(R.R. at 160a–62a (emphasis added)).

In sharp contrast to Dr. Makous' opinion, by enacting section 108(o) the legislature **has decreed** that heart disease is an occupational hazard of firefighting. *Marcks v. Workmen's Compensation Appeal Board (City of Allentown, Department of Public Safety, Bureau of Fire),*

119 Pa.Cmwlth.214, 547 A.2d 460 (1988). This statutory presumption is not conclusive, however, and it may be rebutted by substantial **competent** evidence. *Buchanan v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 659 A.2d 54 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 675, 668 A.2d 1137 (1995). But testimony that adamantly rejects **any** causal relationship between exposure to the hazards of firefighting and heart disease renders the whole of that opinion testimony incompetent. *Marcks*.

In *Marcks*, we held that the opinion of the employer's medical expert that the claimant's thirty-three years of exposure to the hazards of an occupational disease had a "practically non-existent" effect on the claimant's heart and lungs was incompetent as a matter of law. Citing numerous prior decisions, we observed that

> [i]n **none of these cases has the extraordinary proposition been advanced that breathing in heated smoke, fumes and gases while fighting a fire has no long term effect on the heart and lungs.** To the contrary, this Court has consistently held, and the legislature has consistently intended by continued enactment of Section 108(*o*), that fire fighting is a hazardous occupation by reason of the dangerous fumes and gases that a fire fighter breathes while going about his trade.

*Id.* at 464 (emphasis added).

I submit that Dr. Makous' testimony that firefighters have no greater risk of suffering heart disease **than any other individual** is the equivalent of stating that Claimant's twenty-one years as a firefighter had a "practically non-existent effect" on Claimant's heart. Because the testimony of Dr. Makous is substantially similar to the medical testimony at issue in *Marcks*, our holding in *Marcks* requires a determination that the testimony of Dr. Makous is incompetent as a matter of law. When reviewed in its entirety,[3] Dr. Makous' testimony reflects that **Dr. Makous completely and emphatically rejects the legitimacy of the evidentiary presumption** the legislature has provided firefighters under section 108(*o*) of the Act. Indeed, based upon this record, I cannot envision circumstances, other than some "acute episode," in which Dr. Makous would acknowledge the validity of section 108(*o*) of the Act.[4] Because Dr. Makous' testimony directly conflicts with section 108(*o*) of the

---

3. The majority acknowledges that, in determining whether the testimony of a witness is competent, the court must consider the witness' testimony as a whole. Buchanan. Nevertheless, the majority relies on only a few words taken out of context to reach its conclusion. For example, where Dr. Makous states that firefighting "has not been proved medically as a risk factor for heart disease in the way that cigarette smoking [and other factors] have," the majority focuses on the words "in the way that," (Majority op. at 10), as evidence that Dr. Makous acknowledges the presumed relationship between firefighting and heart disease. However, when considered in the context of Dr. Makous' other statements, repeatedly rejecting any such relationship, I believe the majority's inference is unsupported.

4. Compare *City of Wilkes–Barre v. Workmen's Compensation Appeal Board (Zuczek)*, 541 Pa.

435, 664 A.2d 90 (1995); *City of Philadelphia v. Workers' Compensation Appeal Board (Rilling)*, 827 A.2d 1258 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 854 A.2d 968 (No. 405 EAL 2003, filed December 30, 2003); *Kelley v. Workers' Compensation Appeal Board (City of Wilkes–Barre)*, 725 A.2d 232 (Pa.Cmwlth.), *appeal denied*, 560 Pa. 676, 742 A.2d 173 (1999); and *Buchanan*. In those cases, the employers' medical witnesses acknowledged a causal relationship between fire fighting and diseases of the heart and/or lungs, but nevertheless opined that the claimants' disability arose from other causes. In *Buchanan*, for example, the court determined that Dr. Makous' testimony reflected he gave the claimant the benefit of the rebuttable presumption contained in section 108(*o*) of the Act and, thus, the court construed his testimony as giving

Act, as well as over forty years of settled case law, I would hold that the WCJ erred in relying on Dr. Makous' testimony in this case. See *Edwards v. Workmen's Compensation Appeal Board (Hunlock Township)*, 137 Pa.Cmwlth.70, 585 A.2d 56 (1990), *appeal denied*, 528 Pa. 633, 598 A.2d 286 (1991), in which we held that it is error to deny a firefighter the benefit of the presumption afforded by section 301(e) of the Act.

I also agree with Claimant's contention that the WCJ's decision is not a reasoned decision as required by section 422(a) of the Act. I believe that the WCJ's findings are facially flawed and, more important, inadequate for purposes of appellate review. The WCJ made no findings concerning Claimant's testimony about his work history or his duties as a firefighter, and, therefore, the opinion contains no findings as to whether Claimant was exposed to heat, smoke, fumes or gases (the hazards described in section 108(*o*)), during his twenty-one years of fire fighting. Such findings are necessary to the determination of whether Claimant satisfied his burden of proving the existence of the hazards described in the Act. *See Oriole Chemical Carriers, Inc. v. Workers' Compensation Appeal Board (Ambler)*, 720 A.2d 842 (Pa.Cmwlth.1998).

Accordingly, I would vacate the WCAB's decision and remand this matter for a new decision based upon all of the competent evidence of record.

Judge SMITH–RIBNER joins in this dissent.

sufficient deference to the legislature's decree that there is a causal relationship between fire fighting and heart disease. (Dr. Makous has been performing medical examinations on behalf of the City since 1986. (R.R. at 124a.)) In this proceeding, however, Dr. Makous unambiguously rejected the statutory presumption.