# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas J. Swigart, | : | |
| Petitioner | : | |
| v. | : | |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (City of Williamsport), | : | No. 493 C.D. 2015 |
| Respondent | : | Submitted: September 4, 2015 |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
                  HONORABLE MARY HANNAH LEAVITT, Judge
                  HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                                              FILED: December 23, 2015

Thomas J. Swigart (Claimant) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) March 9, 2015 order affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's claim petition (Claim Petition). Claimant presents two issues for this Court's review: (1) whether the City of Williamsport's (Employer) medical testimony was incompetent because its expert witness refused to acknowledge the occupational causal presumption; and (2) whether the WCJ abused his discretion by not permitting the rebuttal testimony of Claimant's additional expert. After review, we affirm.

On October 28, 2011, Claimant filed a Claim Petition alleging that he developed chronic obstructive pulmonary disease (COPD) on January 21, 2011 after more than 22 years of work as a firefighter for Employer, during which he was exposed to smoke, fumes, heat, and gasses in times of stress and all weather extremes. Claimant also alleged that his COPD caused him to stop working as of August 9, 2011. By July 15, 2013 decision, the WCJ denied the Claim Petition. The

WCJ found that while Claimant has asthmatic bronchitis, that condition does not disable him from working as a firefighter. Thus, the WCJ concluded that Claimant does not benefit from the presumption that his lung condition is a work-related occupational disease pursuant to Sections 301(c)(2), 301(e), and 108(o) of the Workers' Compensation Act (Act).[1] The WCJ also concluded that Claimant did not meet his burden of proving a work injury under Section 301(c)(1) of the Act, 77 P.S § 411(1), because his medical evidence regarding the causal relationship of his lung condition to his firefighting was equivocal. Claimant appealed to the Board. On March 9, 2015, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[2]

Claimant first argues that Employer's medical testimony was incompetent because its expert witness explicitly refused to acknowledge the occupational causal presumption given to firefighters with a disease of the heart and lungs. We disagree.

Initially, Section 301(e) of the Act provides:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, **it shall be presumed that the employe's occupational disease arose out of and in the course of his employment**, but this presumption **shall not be conclusive**.

77 P.S. § 413 (emphasis added). Section 108(o) of the Act expressly states that the term occupational disease shall include:

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 411(2), 413, and 27.1(o). Section 301(e) of the Act was added by Section 3 of the Act of October 17, 1972, P.L. 930. Section 108(o) of the Act was added by Section 1 of the Act of October 17, 1972, P.L. 930.

[2] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.)*, 4 A.3d 742, 744 n.1 (Pa. Cmwlth. 2010).

[d]iseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire[]fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

77 P.S. § 27.1(o).

We recognize this Court has held that expert testimony which adamantly rejects any causal relationship between exposure to the hazards of firefighting and lung disease is incompetent. *Marcks v. Workmen's Comp. Appeal Bd. (City of Allentown, Dep't of Pub. Safety, Bureau of Fire),* 547 A.2d 460 (Pa. Cmwlth. 1988). However,

> [t]he determination as to whether the testimony of a medical witness is competent is a question of law and is fully reviewable by this Court. *Buchanan* [*v. Workmen's Comp. Appeal Bd. (City of Phila.),* 659 A.2d 54 (Pa. Cmwlth. 1995), *petition for allowance of appeal denied,* . . . 668 A.2d 1137 ([Pa.]1995).] 'Our review must encompass the witness'[] *entire testimony,* and not merely isolated statements, in reaching our determination.' *Id.*[] at 56 (emphasis added); *see also Kelley v. Workers'* [*Comp.*] *Appeal* [*Bd.*] *(City of Wilkes-Barre),* 725 A.2d 232, 235 (Pa.Cmwlth.1999) (stating that '[i]n determining whether testimony of a medical witness is competent to rebut the presumption . . . , review must encompass the witness' testimony *in toto;* not mere excerpts of the medical witness' testimony'); *City of Wilkes-Barre* [*v. Workmen's Comp. Appeal Bd. (Zuczek),*] 664 A.2d [90,] 93 ([Pa.] 1995) . . . (acknowledging that '[a]fter reviewing [the doctor's] testimony in its entirety, . . . we conclude that the lower court disregarded significant portions of the deposition and that the medical testimony was competent.').

*Dillon v. Workers' Comp. Appeal Bd.*, 853 A.2d 413, 418-19 (Pa. Cmwlth. 2004). The *Dillon* Court concluded that if a doctor "indicates his acknowledgment that the *presumption* exists; [but], he believes its use as a risk factor for [lung] disease is not

3

as medically compelling[,] [t]his does not render his expert opinion incompetent." *Id.* at 419.

Here, Daniel C. DuPont, D.O. (Dr. DuPont) testified as follows:

Q. [Employer's counsel] Dr. DuPont, are you familiar with the fact that in Pennsylvania a firefighter with more than four years [of] experience as a firefighter who develops diseases of the heart and lungs [sic] it is presumed that the diseases are caused by firefighting; **are you familiar with that presumption?**

A. [Dr. DuPont] **I'm familiar that there is a legal opinion stating that fact, yes**.

Q. Do you accept that presumption?

A. I do not.

Q. You reject that presumption?

A. **First off, you need to establish whether a person has heart or lung disease to say that they have a firefighting-related disease.**

**Secondly, there are a host of confounding factors that on an individual basis will leave a clinician such as myself to determine what in order of priority would be causes of that condition.**

So if I have a firefighter who has a hundred-pack-a-year history of smoking and has a classic emphysema, and this man does not, I don't want to confuse this, okay, I will in every single court under oath indicate what that individual's cause of [his] impairment is. And [his] four years or more of firefighting will not be number one on the list. And I will have walls full of literature to support my opinion.

Q. Can we agree that [Claimant] has some form of disease of the lungs?

A. Yes.

Q. Can we agree that in many cases, in general, lung diseases are caused by multifactorial reasons?

A. Yes.

Q. There can be more than one substantial contributing factor to cause or to aggravate or exacerbate a lung disease; is that correct?

A. So let's pick that question apart into two answers. There can be certain identifiable causes of diseases and there can be certain, not necessarily, identical aggravators or exacerbaters of the condition, yes.

Reproduced Record at 114a-116a (emphasis added). Dr. DuPont did not testify that a causal relationship does not exist between exposure to the hazards of firefighting and lung disease. Rather, he opined that if an individual has other significant causal factors, he will not attribute firefighting as the number one cause.[3] Accordingly,

---

[3] *See* Findings of Fact 61, 69, 71 and 77, wherein the WCJ stated:

61. Based upon the history Dr. DuPont took from [] Claimant, the doctor understood: Claimant smoked cigarettes from age 18 being one-half to one pack per day; Claimant averaged one to two alcoholic drinks per day; Claimant's grandparents suffered chronic obstructive lung disease and lung cancer; Claimant had been diagnosed as suffering obstructive sleep apnea, gastroesophageal reflux, depression, hypertension, and a cardiac condition, Wolff- Parkinson-White syndrome.

. . . .

69. When asked if the diagnosis he made was causally related to Claimant's firefighting activities, the doctor opined:

A: I think this man had pre-existing chronic bronchitis and we actually had records indicating an establishment of that before he was sickened with pneumonia in 2011. I believe he had underlying pre-dispositions on the basis of his family history, on his sleep apnea, which was diagnosed, I believe in 2003, and on his gastroesophageal reflux. So I believe that those were preexisting conditions.

I believe that the tobacco usage was one of the factors that caused his condition. And I believe, as I mention in my report, that there were a variety of triggers in his case that could have aggravated his underlying condition, including bacterial infections. . . , including the exposures to dust fumes or smoke.

. . . .

5

because Dr. DuPont "indicate[d] his acknowledgment that the *presumption* exists; [but], he believe[d] its use as a risk factor for [lung] disease is not as medically compelling[,] [t]his does not render his expert opinion incompetent." *Dillon*, 853 A.2d at 419.

Claimant next contends that the WCJ abused his discretion by not permitting the rebuttal testimony of Claimant's additional expert. Specifically, Claimant contends that because Dr. DuPont's diagnostic studies were not provided in a timely manner, he should have been permitted to depose a rebuttal witness. We disagree.

It is well established law that "[t]he admission of evidence is a matter within the sound discretion of the WCJ." *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley),* 29 A.3d 1224, 1230 n.12 (Pa. Cmwlth. 2011). Further,

> [a] party wishing to present depositions for rebuttal shall notify the WCJ in writing within twenty-one days after the conduct of the hearing or deposition at which the testimony to be rebutted has been given. 34 Pa.[]Code § 131.63(d). Following a request to present rebuttal testimony, the testimony shall be taken no later than forty-five days after the conclusion of the case of the party presenting the testimony to be rebutted. 34 Pa.[]Code § 131.53(e). Nonetheless, the WCJ may, for good cause shown, waive or modify any provision of the Special Rules of Administrative Practice and Procedure Before Workers'

---

71. Dr. DuPont specifically opined that [] Claimant's firefighting activities, including exposure to fumes, was not the cause of his underlying breathing difficulties. He explained that these exposures were not the cause of the condition, but rather, potential triggers that can cause [] Claimant to have symptoms.

. . . .

77. Dr. DuPont further agreed that, in general, the cause of lung disease is multifactorial. However, he clearly drew a distinction between the causes of disease, and the triggers of symptoms.

WCJ Dec. at 8, 10, 11.

6

Compensation Judges [i.e. Chapter 131]. 34 Pa.[]Code § 131.3(a).

*Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.),* 942 A.2d 939, 949-50 (Pa. Cmwlth. 2008). The *Coyne* Court expressly held that because

> this case was pending before the WCJ for nearly a year and a half before [the e]mployer expressed its desire to take [the rebuttal] deposition[;] [t]he testimony of [the c]laimant, the medical experts, and numerous lay witnesses had already been taken[;]. . . [the e]mployer scheduled the deposition at issue immediately prior to what was scheduled to be the final hearing on this matter[;] [and i]n light of the fact that the WCJ has authority over what evidence is admitted, and in light of her charge to resolve claims in an efficient manner, we see no abuse of discretion in the WCJ's determination to prohibit [the e]mployer from taking the [rebuttal] deposition . . . .

*Id.* at 950 (citations omitted).

Here, Dr. DuPont's deposition was taken on May 3, 2012, at which time both parties were provided with medical records, including pulmonary function studies and chest x-rays. By May 16, 2012 letter, Claimant stated he wished to leave open the possibility for rebuttal testimony through Jonathan L. Gelfand, M.D. (Dr. Gelfand). However, Claimant did not schedule Dr. Gelfand's deposition until March 27, 2013. The WCJ had set the record to close on April 2, 2013. Employer objected to the deposition on the basis that Claimant had already deposed its medical expert Kevin W. Kist, Jr., D.O. (Dr. Kist) on February 20, 2012. In addition, Dr. Gelfand had evaluated Claimant on June 13, 2012, and issued his report on June 25, 2012. In response to Employer's objection, Claimant maintained that his medical evidence was not complete because he had not received Dr. DuPont's diagnostic studies prior to his deposition and addressing those records is the stated purpose for the

7

deposition.[4] The WCJ sustained Employer's objection and precluded Dr. Gelfand's deposition.

> The Board, citing *Coyne*, opined:
>
> Given the length of the litigation and the WCJ's responsibility to resolve the matter expeditiously, we cannot conclude that [the WCJ] abused his discretion in precluding Dr. Gelfand's deposition where Claimant had already presented his primary medical evidence, which happened to be equivocal and insufficient to meet his burden, and where Claimant failed to schedule the deposition within a reasonable time after the evidence he wished to rebut had been presented or within a reasonable time before the record was set to close.

Board Dec. at 14. We discern no error in the Board's reasoning. Accordingly, we hold that the WCJ did not abuse his discretion in precluding Dr. Gelfand's deposition.

> For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[4] Notably,

> at the IME [Independent Medical Evaluation] performed by Dr. Gelfand in June, 2012, Dr. Gelfand performed a chest x-ray and pulmonary function studies, the results of which were 'normal' and showed no respiratory obstruction and /or restriction. The results of the chest x-ray and pulmonary function studies performed by Dr. Gelfand are identical to the results of the chest x-ray and pulmonary function studies performed by Dr. DuPont. Most importantly, both the studies performed by Dr. Gelfand and Dr. DuPont match [the] pulmonary function studies performed by [C]laimant's treating physician, Dr. Kist, and Dr. Kist also had the opportunity to review chest x-rays. (R. 61a-62a[,] 69a[,] 94a-98a).

Employer Br. at 26.

Thomas J. Swigart,                     :
               Petitioner          :
           v.                        :
                                      :
Workers' Compensation Appeal      :
Board (City of Williamsport),        :     No. 493 C.D. 2015
              Respondent     :

## O R D E R

AND NOW, this 23rd day of December, 2015, the Workers' Compensation Appeal Board's March 9, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge