IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa Kelly,                                      :
                      Petitioner           :
                                                 :
            v.                                   : No. 355 C.D. 2017
                                                 : Submitted:  July 21, 2017
Workers' Compensation Appeal        :
Board (Card Heating & Air               :
Conditioning),                               :
                      Respondent         :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: August 16, 2017


            Lisa Kelly (Claimant), the widow of Martan R. Kelly, Jr. (Mr. Kelly),

appeals the Workers' Compensation Appeal Board (Board) decision affirming the

Workers' Compensation Judge's (WCJ) denial of her claim petition because Mr.

Kelly's fatal heart attack was not the result of his work duties.  We affirm.


**I.**

            The following facts are not in dispute.  Mr. Kelly was employed by

Card Heating & Air Conditioning (Employer) as a heating and air conditioning

technician.  On the morning of May 29, 2014, he reported for work at around 7:00

a.m. at a one-story funeral home where Employer was a subcontractor installing

heating and air conditioning (HVAC) equipment. Upon arrival, Mr. Kelly informed his foreman that he felt weak, tired and had a kink in his neck from sleeping poorly in a chair the night before. He declined the offer to go home and was given a light-duty assignment of running thermostat wire. Around noon, feeling better, Mr. Kelly decided to run wire in the attic by climbing a 12-15 foot ladder into the attic space. He worked alone in the attic. Somewhere between 15 and 40 minutes later, employees heard the sound of moaning coming from the attic. Several employees ascended the ladder and found Mr. Kelly lying incoherent on the floor, thrashing around on the drywall between the trusses, and making babbling sounds. He was bleeding from his head, face and leg. An ambulance transported Mr. Kelly to a local hospital, where he was pronounced dead. The autopsy findings revealed the presence of coronary artery disease, coronary heart disease, atherosclerotic heart disease, and ischemic heart disease. The autopsy report also showed a 60% stenosis of the left main coronary artery, 80% stenosis of the right coronary artery, and 90% stenosis of the left main descending coronary artery. The cause of death was a heart attack.

## II.

### A.

Claimant filed a fatal claim petition (Petition) claiming she was entitled to survivor's workers' compensation benefits because Mr. Kelly's heart attack occurred as a result of his employment.[1] Employer denied the Petition,

---

[1] Under Section 301(a) of the Workers' Compensation Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 431, "[e]very employer shall be liable for compensation for . . . the death of each employe, by an injury in the course of his employment. . . ."

alleging that Mr. Kelly's death by heart attack was not the result of any work-related activities.

Before the WCJ, Claimant testified that she had been married to Mr. Kelly for 30 years. She stated that he did not have any health problems, did not complain about chest pain or heart problems, never saw a heart doctor and was not on any medications. She acknowledged that her husband smoked a pack of cigarettes per day for the last 30 years.[2]

Claimant also presented the testimony of Jack Locke (Foreman Locke), Employer's job foreman, who testified that Mr. Kelly, upon arriving at the worksite, complained that he felt weak and tired and had a kink in his neck because he slept in a recliner all evening. Foreman Lock testified:

Q: He slept in a chair that evening?

A: Yes.

Q: He told you that?

A: Yes, he did.

Q: Because he wasn't feeling good?

A: Yes.

---

[2] Claimant also called as witnesses one of the EMTs who responded to the incident, a state trooper who filed an incident report, and one of the funeral home employees. Their testimony is not relevant to this appeal.

(Reproduced Record (R.R.) at 33a.)

Foreman Locke also testified that he suggested to Mr. Kelly that he take the day off, call his wife and see a doctor. Foreman Locke stated that Mr. Kelly said that he did not have any time left to take off work and thought he could just work through it. Foreman Locke testified that he gave Mr. Kelly the job of running "stat" wire because it was light work. Regarding the physical exertion required by that work, he was asked by Claimant's attorney:

> Q: Would you agree with me that's physical labor?
>
> A: No.
>
> Q: That's not labor?
>
> A: I wouldn't say it's physical, no.

(R.R. at 27a.) Foreman Locke also stated that Mr. Kelly told him that the previous evening, he had gone to a meeting in a tavern with his wife, but left early because a drunken individual was talking loudly in his ear, giving him a headache.

Claimant also called Ronald Burkett (Supervisor Burkett), the field supervisor for the general contractor, Odyssey Builders. His testimony supported Foreman Locke's that running stat wire was a "pretty low strenuous job." (R.R. at 98a.) Supervisor Burkett also stated:

> The only thing I remember about that morning is that [Mr. Kelly] felt like shit and that he was tired. We're not really big complainers, it falls on deaf ears. So it was unusual that he would have said that he wasn't feeling

4

well. That was about the extent that he took it to. He just expressed that he wasn't feeling well that day.

(R.R. at 100a.)

To support that Mr. Kelly's heart attack was work-related, Claimant offered the deposition testimony of Joseph G. Cacchione, M.D. (Dr. Cacchione), who is board certified in cardiology and interventional cardiology. He testified that based on his review of the record, Mr. Kelly's heart attack occurred because Mr. Kelly exerted himself by climbing the ladder that could have led to the plaque rupture that caused the heart attack. Dr. Cacchione also stated that based upon the blood in the attic and the abrasions on his face and body, Mr. Kelly likely fell and that could have caused an adrenaline catecholamine surge that could have triggered the plaque rupture that led to Mr. Kelly's heart attack. However, on cross-examination, Dr. Cacchione acknowledged that he could not be 100% sure when the plaque ruptured, and he agreed that Mr. Kelly had many risk factors in that he smoked a pack of cigarettes per day for 30 years, had a family history of coronary artery disease, and had untreated high cholesterol.

Dr. Cacchione conceded that he was not a forensic expert and he could not give a definite opinion as to whether or not Mr. Kelly fell in the attic merely based upon the patterns of blood on the trusses. Dr. Cacchione stated:

> [H]e *likely* fell. What precipitated his fall, it appears—I mean, he could have—I mean, I can't—I don't want to make conclusions about what happened. . . . What I see there is blood high up on the trusses. So it appears that he actually hit his head up above. And, again, I'm not a

5

forensic expert on blood distribution during trauma. But it appears to me that if he were to have—that the blood was much higher up than if somebody who was laying on the floor, on those trusses.

(R.R. at 289-290a) (emphasis added). Dr. Cacchione also conceded with regard to his report in which he stated that Mr. Kelly "likely fell . . . and hit his head" (Record (R.) Item No. 16, C-03 Joseph Cacchione, M.D., dated 03-26-15):

Q: Again, that's basically speculation on your part?

A: It is speculation. And the terminology of "likely" probably should be . . . changed to "potentially."

(R.R. at 324a.)

To support that Mr. Kelly's heart attack was not work-related, Employer offered the deposition testimony of Jeffery S. Garrett, M.D. (Dr. Garrett), who is board certified in internal medicine and cardiovascular diseases. Dr. Garrett testified that based on his review of the record, he did not believe Mr. Kelly's heart attack was work-related. Included among the factors that he testified that led to this conclusion was that Mr. Kelly's mother had died at age 59 from premature heart disease, Mr. Kelly had a history of heavy smoking, his cholesterol level was 60% higher than recommended, and his preexisting coronary artery disease put him at risk for a sudden cardiac death. Dr. Garrett noted the pathology report prepared for the autopsy showed that Mr. Kelly had blockage in three arteries, with a clot in the left anterior descending coronary artery. Dr. Garrett testified that because three vessels of Mr. Kelly's heart were so severely blocked,

6

he was at an imminent risk of a heart attack whether or not he had gone to work the day he suffered his fatal heart attack.

Dr. Garrett opined that Mr. Kelly had been suffering ischemic symptoms – insufficient blood flow to the heart – for 8 to 12 hours before coming to work. He noted that Mr. Kelly slept in a recliner the previous evening because he was unable to lie flat in bed due to his cardiac symptoms. Also, Mr. Kelly's symptoms the morning of May 29, 2014, when he reported to work, which gave rise to his out-of-character complaints regarding how he was feeling that day, were the initial signs that he was undergoing a cardiac event.

Dr. Garrett also opined that the light-work duties that Mr. Kelly performed, including climbing the ladder into the attic, were insufficient to cause the cardiac event. His explanation was that climbing the ladder would not have elevated Mr. Kelly's heart rate enough to cause a cardiac event unless he had done it quickly or repeatedly and for greater than nine minutes.

**B.**

The WCJ denied Claimant's Petition. She found Dr. Cacchione's opinion that Mr. Kelly "likely fell" not credible because Dr. Cacchione had no personal knowledge of this event, and there were no witnesses to confirm whether or not Mr. Kelly did, in fact, fall. She also rejected his opinion that Mr. Kelly's climbing of the ladder was a cause of his heart attack. Furthermore, the WCJ found the testimony of Foreman Locke and Supervisor Burkett to be credible that Mr. Kelly's laying of thermostat wire was not heavy or strenuous work. Finally,

7

the WCJ found Dr. Garrett's medical opinion to be credible and persuasive, because:

> Dr. Garrett opined, based on the pathology exam findings, that [Mr. Kelly] had significant pre-existing blockage of three vessels of the heart and was at risk of an imminent heart attack with or without physical exertion. He also opined that based on the history of [Mr. Kelly's] complaints of not feeling well when he arrived to work, [Mr. Kelly] was having ischemic symptoms indicative that there was insufficient blood flow to his heart. Lastly, he opined that the climbing of the ladder to enter the work space was insufficient to trigger or cause the heart attack because it would not have been a sufficiently strenuous activity to increase his heart rate to the point of causing the heart attack.

(R.R. at 352a.)

Claimant appealed to the Board, contending that the WCJ erred in crediting Dr. Garrett's opinion that Mr. Kelly suffered ischemic symptoms for 8 to 12 hours before coming to work was not supported by substantial evidence. The Board pointed to Foreman Locke's testimony that Mr. Kelly told him he slept in his chair the night before because he was not feeling well, even though Claimant did indicate that Mr. Kelly did say that he had a headache from someone talking excessively in his ear. However, the Board ultimately rejected Claimant's argument, finding that the possibility of inaccuracy did not render Dr. Garrett's opinion incredible. The Board pointed out that Dr. Garrett's opinion did not hinge on Mr. Kelly having cardiac symptoms the night before he died, but merely that Dr. Garrett believed that is when the symptoms started. The Board also noted that

8

the WCJ considered and rejected Dr. Cacchione's two theories as to the cause of the heart attack, i.e., that climbing the ladder into the attic was a strenuous enough activity to precipitate a heart attack and that Mr. Kelly may have fallen in the attic, which could have caused or contributed to the heart attack. Because Claimant was unable to make a causal connection between her husband's death and the work he was performing, the Board affirmed the WCJ's opinion. This appeal followed.[3]

## III.

In a workers' compensation case, the burden is upon the claimant to establish all elements to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592 (Pa. 1993). To establish that a fatal heart attack was work-related, a claimant must prove that: (1) the heart attack arose in the course of employment and (2) it was related thereto. *Haddon Craftsmen, Inc. v. Workers' Compensation Appeal Board (Krouchick)*, 809 A.2d 434 (Pa. Cmwlth. 2002). Furthermore, if "the causal connection between a decedent's work and his sudden cardiac death is not obvious, the connection must be established by unequivocal medical testimony." *Id.* at 439. In this case, because Mr. Kelly's heart attack occurred at work, the only issue was whether Claimant satisfied her burden that the heart attack was caused by Mr. Kelly's work.

---

[3] In workers' compensation appeals, this Court's review is limited to determining whether the Board's adjudication was in violation of constitutional rights, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Edwards v. Workers' Compensation Appeal Board (Lower Bucks County Joint Mun. Auth.)*, 134 A.3d 1156, 1161 n.4 (Pa. Cmwlth. 2016).

Claimant argues that the Board erred in affirming the WCJ's finding that she did not satisfy her burden to make out the claim because the WCJ relied on Employer's medical expert, whose opinion is incompetent because it is based upon facts not of record, namely, that Mr. Kelly was having ischemic symptoms for 8 to 12 hours before coming to work.

At the outset, even if we accept Claimant's position, which we do not, Claimant would still not have sustained her burden of showing that the heart attack was work-related. The WCJ accepted the testimony of both Foreman Locke and Supervisor Burkett that Mr. Kelly's assignment of laying thermostat wire was not heavy or strenuous work. More importantly, she rejected Dr. Cacchione's opinion that the physical activity of climbing the ladder, together with a "potential" fall, could have possibly caused an adrenaline catecholamine surge precipitating the heart attack.[4] Because Claimant had the burden to show by medical testimony that the heart attack was work-related, once her medical witness' testimony was rejected, she failed to meet her burden and the Board properly affirmed the WCJ's decision for that reason alone.

---

[4] The WCJ has exclusive province over questions of credibility and evidentiary weight, and those findings generally may not be disturbed when they are supported by substantial, competent evidence. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 578 A.2d 83 (Pa. Cmwlth. 1990). Furthermore, the WCJ is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 593 A.2d 921 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 600 A.2d 541 (Pa. 1991). This Court does not have the authority to review credibility determinations. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995).

We now look to Claimant's assertion that the WCJ erred in finding credible Dr. Garrett's opinion that Mr. Kelly's heart attack was not work-related because his symptoms began 8 to 12 hours before going to work. Foreman Locke did testify that Mr. Kelly told him he slept in a recliner the evening before his heart attack because he did not feel well. Taken together with how the cardiac event unfolded, Dr. Garrett's conclusion that the cardiac event began the previous night was a permissible inference.

In any event, even if it was not a permissible inference, credibility as an expert when his opinion is backed by sufficient evidence is based on the expert's entire testimony rather than isolated statements that were not necessary for the expert's conclusion. *Dillon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 853 A.2d 413 (Pa. Cmwlth. 2004); s*ee also Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543, 555 (Pa. 2013) (holding that upon appellate review should be based on WCJ's actual findings rather than isolated testimony to arrive at a different determination than the WCJ).

In this case, Dr. Garrett's opinion that Mr. Kelly's heart attack was not work-related, as he stated himself, was primarily based on the uncontested fact that Mr. Kelly complained of not feeling well when he came into work the morning of May 29, 2014. When Claimant's counsel questioned Dr. Garrett during his deposition regarding whether his opinion would change if there was no testimony in the record supporting the notion that Mr. Kelly slept in a recliner the night before because he had pain, Dr. Garrett clarified that his opinion would change if

11

Mr. Kelly "had no symptoms at all, if he never spoke to his coworkers, his foreman, or any of his coworkers, and there was no testimony that he . . . 'felt badly.'" (R.R. at 247-48a.). We also note that the WCJ, like Dr. Garrett, did not rely on this inference – that Mr. Kelly slept in the chair the night before because the cardiac event had begun – in accepting Dr. Garrett's testimony that the heart attack was not work-related.

Accordingly, because Claimant failed to sustain her burden that Mr. Kelly's heart attack was work-related, the Board's order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa Kelly, : 
            Petitioner : 
         : 
          v. : No. 355 C.D. 2017
         : 
Workers' Compensation Appeal : 
Board (Card Heating & Air : 
Conditioning), : 
            Respondent : 

**O R D E R**

AND NOW, this 16<u>th</u> day of <u>August</u>, 2017, the order of the Workers' Compensation Appeal Board dated March 1, 2017, in the above-captioned matter is affirmed.

_____
DAN PELLEGRINI, Senior Judge