IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Airlines, Inc., Sedgwick : 
Claims Management Services, Inc. : 
and New Hampshire Insurance : 
Company : 
             Petitioners : 
              : 
           v. : No. 644 C.D. 2018
            : Submitted: October 12, 2018
Workers' Compensation Appeal : 
Board (Neves), : 
             Respondent : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: March 22, 2019

      American Airlines, Inc., Sedgwick Claims Management Services, Inc., and New Hampshire Insurance Company petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted Robert Neves' (Claimant) claim petition for benefits under the Workers' Compensation Act (Act).[1] In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant proved that he suffered a disabling injury at work. Discerning no error, we affirm the Board.

      Claimant worked for American Airlines, Inc. (Employer) for nine years as a baggage handler. On February 3, 2015, Claimant filed a claim petition alleging

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2710.

that he suffered a "heart attack, myocardial infarction, [and] damage to the heart muscle" as a result of lifting baggage at work on January 5, 2015. Reproduced Record at 2a (R.R.__). Claimant sought total disability benefits plus penalties for Employer's failure to issue a notice of compensation payable (NCP). Employer filed an answer denying the allegations. The matter was assigned to a WCJ.

Claimant testified by deposition on April 9, 2015. He stated that his duties for Employer included loading and unloading customer luggage and other cargo. On January 5, 2015, while at work, Claimant lifted a piece of luggage weighing around 90 pounds and placed it onto a cart. Not "feeling right" after lifting the bag, Claimant started sweating and experiencing heart palpitations. Notes of Testimony (N.T.), 4/9/2015, at 7, 26; R.R. 41a, 60a. Claimant told his co-worker he was not feeling well and went to the onsite nurse's office. The nurse gave Claimant aspirin and called an ambulance. He was taken to Mercy Fitzgerald Hospital, where he had two stents inserted in his cardiac arteries. Claimant was hospitalized for three days.

On January 11, 2015, Claimant suffered another cardiac episode after an argument with his wife. He was hospitalized until January 25, 2015, at Virtua Marlton Hospital in New Jersey, where two additional stents were inserted.

Claimant testified that he suffers from coronary artery disease and diabetes. Until 2012, he smoked two packs of cigarettes a day. Claimant suffered his first heart attack in September 2012. After the first heart attack, he was diagnosed with hypertension and hypothyroidism. He stopped drinking alcohol; reduced his smoking to one pack of cigarettes a week; and began exercising regularly. Claimant was out of work until he returned to his position as a baggage handler in June 2014, which he did without informing his cardiologist.

2

Before the WCJ, at a hearing on November 12, 2015, Claimant testified that he had a defibrillator implanted in July 2015. He continues to experience shortness of breath and sees his treating cardiologist, Howard Gitter, M.D., approximately once a week.

Claimant offered the deposition testimony of Dr. Gitter, a board certified cardiologist, who began treating Claimant in October 2012, after his first heart attack. At that time, Dr. Gitter tested Claimant's ejection fraction, which measures the heart's ability to contract. Dr. Gitter explained that patients with ejection fractions over 55 percent are considered normal. Less than 50 percent is considered mildly impaired; less than 40 percent is considered mild to moderately impaired; less than 35 percent is considered moderately to severely impaired; and less than 30 percent is severely impaired. N.T., 10/28/2015, at 13-14; R.R. 102a-103a. After Claimant's 2012 heart attack, his ejection fraction fell below 30 percent.

Dr. Gitter testified that Claimant's condition slowly improved until April 2014, when he stopped experiencing chest discomfort. Claimant's ejection fraction improved to 35 to 40 percent, which, in Dr. Gitter's opinion, demonstrated mild impairment. Although Claimant had recovered from the 2012 heart attack, Dr. Gitter expressed concern to Claimant about his return to work as a baggage handler. Nevertheless, Claimant did so in June 2014.

Dr. Gitter testified that he next saw Claimant on February 2, 2015. Claimant's ejection fraction had dropped to 30 to 35 percent, demonstrating moderate to severe impairment. Dr. Gitter determined that Claimant had an acute myocardial infarction at work on January 5, 2015, which was "not [] a heart attack, per se" according to enzyme analysis. N.T., 10/28/2015, at 12; R.R. 101a. At his next visit in April 2015, a nuclear stress test and echogram indicated Claimant's

ejection fraction was between 28 and 35 percent. Because a prophylactic defibrillator implant is recommended for patients with an ejection fraction below 35 percent, Dr. Gitter recommended one for Claimant. This procedure was done in July 2015.

Dr. Gitter stated that Claimant is "absolutely … disabled from his job." *Id*. at 17; R.R. 106a. He opined that Claimant's disability resulted from the work incident of January 5, 2015. Dr. Gitter explained that Claimant could work in a sedentary job with a 10 to 15-pound lifting restriction.

On cross-examination, Dr. Gitter testified that Claimant had recovered from his 2012 heart attack based on his increased ejection fraction percentages; his performance on follow-up stress tests; and his lack of complaints. During a treadmill stress test, Claimant worked for ten minutes and achieved 113 percent of the predicted heart rate. Dr. Gitter described this as "excellent." *Id.* at 31; R.R. 120a. Claimant no longer complained about his shortness of breath and chest tightness.

Dr. Gitter agreed that Claimant's argument with his wife on January 11, 2015, was a stressful event that caused Claimant to be readmitted for another cardiac catheterization. However, Dr. Gitter did not believe that a personal confrontation could affect Claimant's heart to the same extent as physical overexertion.

Employer offered the deposition testimony of Andrew Meshkov, M.D., who is board certified in cardiovascular medicine and conducted an independent medical examination (IME) of Claimant on February 25, 2016. Dr. Meshkov testified that Claimant's 2012 heart attack caused "irreversible cardiac damage to the front wall of his left ventricle." N.T., 3/24/2016, at 12; R.R. 201a. Dr. Meshkov stated that he would not have released Claimant to return to his job with Employer after the 2012 heart attack. He reviewed Claimant's medical history and explained

4

that Claimant's obstructive sleep apnea, high cholesterol, diabetes and tobacco and alcohol use all contributed to Claimant's increased risk of cardiac events.

Dr. Meshkov concluded that on January 5, 2015, Claimant suffered a "very, very small myocardial infarction," caused by his severe multi-vessel coronary artery disease and the physical exertion of Claimant's job as a baggage handler. *Id.* at 28; R.R. 217a. Claimant also suffered a small myocardial infarction on January 11, 2015. Dr. Meshkov concluded that the January 11, 2015, event was unrelated to the January 5, 2015, event.

Dr. Meshkov opined that Claimant is disabled as a result of his "severe chronic coronary disease and the major myocardial infarction" Claimant suffered in 2012. *Id.* at 32; R.R. 221a. However, Dr. Meshkov did not believe that the January 2015 events caused Claimant's present disability. He stated that the most significant factor in Claimant's disability was the September 2012 heart attack. Dr. Meshkov concluded that Claimant has recovered from his 2015 cardiac episodes and is capable of light work and light physical activity. He opined that Claimant will require lifetime care for his cardiac issues, which are the result of Claimant's 2012 heart attack.

The WCJ concluded that Claimant proved that he suffered a disabling injury while working for Employer on January 5, 2015. The WCJ credited Claimant's testimony about his past medical history, the January 5, 2015, event and his ongoing symptoms. The WCJ found that Claimant's testimony was supported by medical records, diagnostic tests, and the clinical observations of both Drs. Gitter and Meshkov.

The WCJ credited Dr. Gitter's testimony that during the incident of January 5, 2015, Claimant's heart was put under stress and oxygen delivery to his

5

heart was diminished due to the exertion of lifting and straining, which caused heart scarring and diminished function. The WCJ accepted Dr. Gitter's opinion that although Claimant has suffered severe coronary artery disease since 2012, the January 5, 2015, incident was the cause of his present inability to work. In support, the WCJ noted that Dr. Gitter's opinions were supported by Claimant's credible testimony, his own clinical observations as Claimant's treating physician since 2012, and diagnostic test results.

The WCJ found Dr. Meshkov credible in part. The WCJ credited Dr. Meshkov's testimony that Claimant suffered a severe heart attack in 2012 and two subsequent heart attacks in 2015. However, the WCJ discredited Dr. Meshkov's testimony that Claimant's ongoing disability and need for medical care was unrelated to the work-related cardiac event that occurred on January 5, 2015.

Consistent with the above findings, the WCJ granted Claimant's claim petition and awarded benefits to Claimant at the rate of $457.09 per week retroactive to January 6, 2015, and ongoing.

Both parties appealed to the Board. Employer argued that the WCJ erred in holding that Claimant proved he suffered a disabling work-related injury, and Claimant argued that the WCJ erred in the calculation of his average weekly wage. The Board affirmed the WCJ's decision to grant the claim petition, holding that it was supported by substantial evidence. As to Claimant's cross-appeal, the Board remanded for the WCJ to make further findings on Claimant's average weekly wage. Following a hearing on April 20, 2017, the WCJ confirmed its prior computation of Claimant's earnings and compensation rate.[2] Employer appealed the

---

[2] Claimant did not appeal the WCJ's decision; therefore, his average weekly wage is no longer at issue.

6

WCJ's second decision for the sole purpose of obtaining an order from the Board making its prior order final. The Board granted this request, and Employer's appeal of the Board's grant of Claimant's claim petition is ready for disposition.

On appeal,[3] Employer raises several issues.[4] First, it contends that the WCJ capriciously disregarded evidence in finding that Claimant proved a disabling work-related injury. Second, it contends that the WCJ's findings of fact are based upon incompetent expert medical testimony. Third, it contends that the WCJ did not issue a reasoned decision.

In its first issue, Employer contends that the WCJ capriciously disregarded the overwhelming evidence that Claimant's heart attack in 2012, which was not work-related, is the cause of Claimant's disability up to and after the event at work on January 5, 2015. In addition, the WCJ capriciously disregarded the second cardiac event on January 11, 2015, which Employer characterizes as "an aggravating and/or superseding event in the 'chain of events' that affected the Claimant's cardiac condition[.]" Employer Brief at 19.

Capricious disregard of evidence "occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). More specifically, a capricious disregard of evidence occurs "where the factfinder has refused to resolve conflicts in the evidence, has not made essential

---

[3] Our review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether board procedures were violated, or whether necessary findings of fact are supported by substantial evidence. *Reed v. Workers' Compensation Appeal Board (Allied Signal, Inc.)*, 114 A.3d 464, 468 n.3 (Pa. Cmwlth. 2015). Additionally, when raised, this Court will review for capricious disregard of evidence. *Id.*

[4] For purposes of this opinion, we have consolidated Employer's issues.

credibility determinations or has completely ignored overwhelming evidence without comment." *Id.* at 1263. It is the responsibility of the factfinder to resolve the conflicts in the testimony and explain why it has accepted, or rejected, each piece of relevant evidence. *Id.* The Pennsylvania Supreme Court has explained that review for capricious disregard of competent evidence is an "appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

The WCJ summarized the testimony of each witness, including that of Dr. Gitter and Dr. Meshkov. The WCJ specifically found that Claimant suffered a severe myocardial infarction in 2012; the WCJ did not disregard that event. The WCJ considered the testimony of both medical experts about Claimant's medical history, and he resolved the conflict between them. Specifically, the WCJ discredited Dr. Meshkov's testimony that the January 5, 2015, work incident was not a cause of Claimant's disability.

Nor did the WCJ disregard Claimant's cardiac event on January 11, 2015, which Employer contends was "an aggravating and/or superseding event in the 'chain of events' that affected the Claimant's cardiac condition[.]" Employer Brief at 19. The WCJ considered, but rejected, the possibility that the January 11, 2015, incident was responsible for Claimant's ongoing disability. Rather, the WCJ found that the January 5, 2015, incident was responsible for Claimant's present symptoms. The WCJ reached these conclusions on causation on the basis of the medical evidence and Claimant's testimony. The WCJ's "express consideration and rejection" of the medical evidence "by definition, is not capricious disregard." *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*,

8

862 A.2d 137, 145 (Pa. Cmwlth. 2004). We reject Employer's claim that the WCJ capriciously disregarded evidence.

In its second issue, Employer argues that the WCJ erred in relying upon Dr. Gitter's expert testimony, which Employer asserts was equivocal and legally incompetent. When the causal connection between an injury and disability is not obvious, unequivocal medical evidence is needed to establish that connection. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394 (Pa. Cmwlth. 2015). Equivocal medical testimony can render a medical opinion incompetent. *Spotts v. Workmen's Compensation Appeal Board (Superior Tube Co.)*, 541 A.2d 446 (Pa. Cmwlth. 1988). Competency is "merely a question of whether the witnesses' opinion is sufficiently definite and unequivocal to render it admissible." *Cerro Metal Products Co. v. Workers' Compensation Appeal Board (PLEWA)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004) (quoting *Cramer v. Workmen's Compensation Appeal Board (Uni-Marts & PMA Group)*, 627 A.2d 231, 233 (Pa. Cmwlth. 1993)). This Court has explained that "medical evidence is unequivocal as long as the medical expert, after providing a foundation, testifies that in his professional opinion he believes or thinks the facts exist." *Cerro Metal Products*, 855 A.2d at 937. That a medical expert admits to some uncertainty, reservation or lack of information with respect to scientific or medical details does not render the opinion equivocal. *Id.*

Employer argues that Dr. Gitter's opinion was equivocal and incompetent because he did not address the many factors affecting the Claimant's ability to work. These factors include: (1) Claimant's heart attack in September 2012; (2) Claimant's preexisting and ongoing severe coronary artery disease; (3)

9

Claimant's second heart attack on January 11, 2015; and (4) Claimant's episodes of chest pain after the incident on January 11, 2015, that led to a defibrillator implant.

Employer points out that Dr. Gitter specifically testified that the Claimant "did not have a heart attack per se" on January 5, 2015, as confirmed by enzyme analysis at Mercy Fitzgerald Hospital. N.T., 10/28/2015, at 12; R.R. 101a. Indeed, the WCJ so found. When asked whether Claimant's symptoms were due to Claimant's ongoing heart condition, Dr. Gitter testified as follows:

> Well I don't know that I can say that. Something acutely occurred on January 5 because for six months he was apparently fine. He hadn't come in to see me.

*Id.* at 35; R.R. 124a. Employer asserts that this testimony constitutes the very definition of equivocal testimony. We disagree.

A medical expert's opinion on causation must be reviewed as a whole. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14 (Pa. Cmwlth. 2008). A medical opinion does not become equivocal on the basis of a single phrase extracted from a deposition. *Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel, Inc.)*, 668 A.2d 131 (Pa. 1995); *see also Jordan v. Workmen's Compensation Appeal Board (Consolidated Electrical Distributors)*, 704 A.2d 1063 (Pa. 1997) (explaining that one sentence should not be extracted from a physician's 27-page deposition to conclude that his opinion was equivocal). Dr. Gitter unequivocally opined that Claimant experienced a cardiac episode on January 5, 2015, that enhanced his pre-injury symptoms, and it was that event that has disabled him from his job.

Furthermore, and contrary to Employer's assertions, Dr. Gitter's opinion fully addressed the 2012 heart attack, Claimant's other health issues and the reason why Claimant's defibrillator was not implanted until July 2015. While

10

Claimant suffered from type 2 diabetes, hypertension, hypothyroidism, and anxiety, and used tobacco, Dr. Gitter pointed out that Claimant had these issues under control with medications and lifestyle changes. Further, Dr. Gitter opined that Claimant had recovered from his 2012 heart attack. As to Claimant's defibrillator, Dr. Gitter explained that after a heart episode, a patient's ejection fraction can improve. Cardiologists wait 90 days to determine whether a patient should receive a defibrillator. Thus, Dr. Gitter did not immediately order a defibrillator after Claimant's January 5, 2015, episode.

In effect, Employer argues that the WCJ should have relied on Dr. Meshkov's medical opinion that Claimant's present disability was unrelated to the January 5, 2015, work incident but, rather, was caused by Claimant's preexisting and chronic coronary artery disease. The WCJ found this testimony neither credible nor persuasive but, rather, credited Dr. Gitter's testimony that Claimant sustained a disabling heart attack as a result of his strenuous position working for Employer. The WCJ based his credibility determination on Dr. Gitter's familiarity with Claimant's conditions as his treating physician. We decline to revisit the WCJ's credibility determinations. *See Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 28-29 (Pa. Cmwlth. 2005) (explaining that this Court is bound by the WCJ's credibility determinations).

In its third issue, Employer argues that the WCJ did not issue a reasoned decision because he did not adequately explain why Claimant's cardiac event at work on January 5, 2015, was disabling even though Claimant had suffered a major heart attack in 2012. That heart attack was such that the treating cardiologist advised against Claimant's return to his job as a baggage handler. Employer also contends

11

that the WCJ failed to explain how, or to what extent, the January 11, 2015, cardiac event affected Claimant's condition.

Section 422(a) of the Act states that parties are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834. Accordingly, the WCJ "shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section." *Id.* A decision is reasoned "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than the bald statement that one expert is more credible than another. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194-95 (Pa. Cmwlth. 2006). The WCJ must explain his credibility finding in objective terms. *Id.* Credibility determinations, unless arbitrary or capricious, will be upheld on appeal.

Here, the WCJ cited objective reasons for why he credited Dr. Gitter's deposition testimony, *i.e.*, it was supported by Claimant's own testimony and diagnostic test results. The WCJ also observed that Dr. Gitter has been Claimant's treating physician since 2012. Viewing the record as a whole, the WCJ rejected Dr. Meshkov's opinion that Claimant's ongoing disability and future medical care was unrelated to the January 5, 2015, work incident. Because the WCJ's stated reasons

12

for his credibility determinations are supported by the record, his decision was reasoned under Section 422(a).

For all of the foregoing reasons, this Court affirms the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Airlines, Inc., Sedgwick    :
Claims Management Services, Inc.    :
and New Hampshire Insurance    :
Company    :
             Petitioners    :
    :
        v.    : No. 644 C.D. 2018
    :
Workers' Compensation Appeal    :
Board (Neves),    :
             Respondent    :

# **O R D E R**

AND NOW, this 22nd day of March, 2019, the order of the Workers' Compensation Appeal Board dated April 13, 2018, is hereby AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge