# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Olympus and Sompo America : 
Insurance Company, : 
                  Petitioners : 
                   : 
            v. : No. 38 C.D. 2022
                 : Submitted: September 9, 2022
Dana Eiselen (Workers' Compensation : 
Appeal Board), : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED: October 23, 2023

Olympus and Sompo America Insurance Company (together, Employer) petition for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting the Petition to Review Compensation Benefits (Review Petition) filed by Dana Eiselen (Claimant) and denying Employer's Petition to Terminate Compensation Benefits (Termination Petition). On appeal, Employer argues that Claimant's medical expert's testimony, upon which the WCJ relied to expand the description of Claimant's work-related injuries and find that Claimant was not fully recovered, was not legally competent to support those determinations. Employer further argues that the WCJ's decision was not reasoned as required by Section

422(a) of the Workers' Compensation Act (Act),[1] and, therefore, should have been reversed by the Board. Upon review, we affirm.

## I. BACKGROUND

### A. The Petitions

Claimant sustained work-related injuries on March 30, 2017, described in a Notice of Temporary Compensation Payable (NTCP) as "a contusion and multiple head injuries." (WCJ Decision, Finding of Fact (FOF) ¶ 1.) The NTCP's narrative described how the injuries occurred as "[Claimant] fell ill after eating dinner 3/29 with colleague. Sick all night. Collapsed in morning 3/30 on hard surface and hit head. Went to [emergency room] and then was admitted to hospital 3/30." (Reproduced Record (R.R.) at 1a.) The NTCP converted to a Notice of Compensation Payable (NCP) by operation of law. (FOF ¶ 1.)

Claimant has returned to work for Employer without a loss of earnings, resulting in the suspension of her wage loss benefits, which leaves only her ongoing receipt of medical benefits at issue. (*Id.* ¶¶ 6d, 18.) On May 30, 2019, Employer filed the Termination Petition, averring that Claimant had fully recovered from her work-related injuries as of January 2, 2019, based on the opinion of Leonard Bruno, M.D. (*Id.* ¶ 3.) Claimant filed the Review Petition on December 10, 2019, seeking to expand the description of the work injury to include a concussion. (*Id.* ¶ 4.) Both Employer and Claimant filed answers to the others' Petitions, denying the allegations therein. (R.R. at 8a, 13a.)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

2

*B.     Proceedings Before the WCJ*

The Petitions were assigned to the WCJ, who held multiple hearings. Claimant testified, and the parties presented the deposition testimonies of their respective experts, Dr. Bruno for Employer, and Daniele Shollenberger, C.R.N.P. (Ms. Shollenberger) for Claimant.

Claimant testified[2] concerning the work-related incident and the treatment she received.  Claimant's general practitioner referred her to Ms. Shollenberger, a Certified Registered Nurse Practitioner (CRNP), who manages Claimant's concussion treatment plan, which includes speech therapy, physical therapy, and massage therapy.  Claimant has challenges with focusing, short-term memory, speaking, sleeping through the night, and insomnia.  She continues to have pain in her shoulder and neck and headaches multiple times a week, and performing daily activities results in mental fatigue.  Prior to the work injuries, Claimant did not have issues with her memory, speech, and headaches.  Since the COVID-19 pandemic, Claimant has worked from home, which has resulted in regression in some of the improvements in her speech, memory, and focus.  Claimant denied having any prior head injuries or that she felt listless or had less stamina or energy three to four weeks before she sustained the work injuries.  Claimant acknowledged being diagnosed with aplastic anemia in June 2017, for which she received a bone marrow transplant, a week of chemotherapy, and some physical and occupational therapy.  Claimant's aplastic anemia treatment ended in August 2018, after which her cognitive and occupational treatment for the work injuries resumed.  Claimant does not feel fully recovered from her work-related injuries.

---

[2] Transcripts of Claimant's March 6, 2020 deposition and July 28, 2020 video hearing testimony are found, respectively, at Certified Record Item Nos. 24 and 17 and pages 20a-52a and 233a-47a of the Reproduced Record.  This testimony is summarized in Findings of Fact 5 and 6.

Ms. Shollenberger[3] is an autonomous provider who works with the chief of neurosurgery if needed, is the Program Director of the Concussion and Head Trauma Program (Concussion Program) at the Lehigh Valley Health Network, and treats concussion patients. Ms. Shollenberger first saw Claimant in April 2017, when she obtained a history of the work-related incident, and Claimant's immediate treatment, which included a diagnosis of a concussion. Following Ms. Shollenberger's examination of Claimant, which revealed continued trouble with sleeping, fatigue, light sensitivity, decreased appetite, dizziness, headaches, posterior cervical pain, trapezius pain, issues with balance, and difficulty in focusing of the eyes, concentration, and focus, Ms. Shollenberger, too, diagnosed Claimant with a concussion. Ms. Shollenberger continued to treat Claimant as of April 1, 2020, during which time Claimant had ongoing symptoms. Ms. Shollenberger changed Claimant's diagnosis to post-concussive syndrome because Claimant's symptoms continued for more than a month after initial treatment. In Ms. Shollenberger's opinion, Claimant was not fully recovered. Ms. Shollenberger was aware of Claimant's treatment for aplastic anemia, during which time she did not see Claimant. Ms. Shollenberger did not review those records and acknowledged that chemotherapy can cause fatigue and cognitive issues. She also acknowledged that it would be abnormal to develop new symptoms of post-concussive syndrome three years after the trauma, and she described Claimant's concussion as "mild" because it was not accompanied by head trauma and positive diagnostic studies. (FOF ¶ 7n-o.)

---

[3] Ms. Shollenberger's deposition testimony is found at Certified Record Item No. 19 and pages 129a-96a of the Reproduced Record. It is summarized in Finding of Fact 7.

Dr. Bruno,[4] a board-certified neurosurgeon, performed an Independent Medical Examination of Claimant on October 29, 2018, during which Claimant complained of intermittent headaches, balance issues, and cognitive function impairment as a result of the incident, and described her treatment for aplastic anemia. The results of Dr. Bruno's physical and neurological examination of Claimant were normal, with no balance, gait, or memory issues, and no positive neurologic findings. Dr. Bruno's review of Claimant's initial hospital records revealed a normal computerized tomography (CT) scan and no reference to skull trauma, and Claimant's records from April 26, 2017, reflected complaints of decreased energy from a severe viral infection in January 2017. This viral infection, Dr. Bruno opined, caused Claimant's aplastic anemia, which accounted for Claimant's complaints of having less energy than normal. Based on his examination of Claimant and Claimant's medical records, Dr. Bruno concluded that the March 30, 2017 incident was related to Claimant's aplastic anemia; her work-related injury was limited to a head contusion, from which she had fully recovered; she did not suffer a work-related concussion; and her ongoing cognitive issues, sensitivity to light, headaches, and visual disturbances were the result of the aplastic anemia and related chemotherapy. According to Dr. Bruno, Claimant no longer required treatment for the work-related head contusion and could return to full duty without restrictions.

Upon her review of the record, the WCJ credited Claimant's testimony, citing the WCJ's personal observations of Claimant and the consistency of Claimant's testimony with her medical records. (FOF ¶ 10.) As between the medical witnesses,

---

[4] Dr. Bruno's deposition testimony is found at Certified Record Item No. 23 and pages 73a-108a of the Reproduced Record. It is summarized in Finding of Fact 8.

the WCJ found Ms. Shollenberger's testimony more persuasive than Dr. Bruno's testimony because

> Ms. Shollenberger has had the opportunity to observe Claimant over a longer period of time than Dr. Bruno. In addition, the medical records from Claimant's hospital stay immediately following her fall diagnose a concussion, Claimant's symptoms are consistent with post-concussive syndrome[,] and she continues to work despite her symptoms[,] elevating [Claimant's] credibility and that of her medical expert.

(*Id.* ¶ 11.)

Having credited Ms. Shollenberger's opinions, the WCJ found that Claimant had met her burden of proving that the description of the work injury should include a concussion and post-concussive syndrome, granted the Review Petition, and modified that description accordingly. (*Id.* ¶¶ 13-14; WCJ Decision, Conclusion of Law (COL) ¶ 2.) Finding that Claimant's work injuries include a concussion and post-concussive syndrome, the WCJ rejected Dr. Bruno's opinion of full recovery because he did not address those injuries. (FOF ¶ 12.) Thus, the WCJ found that Employer did not meet its burden of proof on the Termination Petition and denied the same. (*Id.* ¶ 15; COL ¶ 3.)

### C. Appeal to the Board and the Board's Opinion

Employer appealed to the Board, raising the same arguments as it does here. Upon review, the Board affirmed the WCJ's decision. The Board held that Pennsylvania courts have recognized that nurses may provide competent, medical expert opinions because their training and experiences make them more knowledgeable in that field than an ordinary individual. (Board Opinion (Op.) at 7 (citing *Freed v. Geisinger Med. Ctr.*, 5 A.3d 212 (Pa. 2010); *Miller v. Brass Rail*

6

*Tavern, Inc.*, 664 A.2d 525 (Pa. 1995)).) Citing Ms. Shollenberger's credentials as a registered nurse and CRNP in the field of neurology and brain trauma, and concussions in particular, the Board found no abuse of discretion or error in the WCJ finding Ms. Shollenberger competent to opine as to Claimant's condition and the causal connection between the work incident and that condition. (*Id.* at 8-9.) The Board noted that because Claimant did not have to disprove a causal connection between her concussion and aplastic anemia, Ms. Shollenberger's limited knowledge of aplastic anemia went to the weight, not competency, of her testimony. (*Id.* at 9.) The Board further held the WCJ's decision was reasoned because it summarized the testimony presented, provided objective reasons for crediting Ms. Shollenberger's competent testimony and rejecting Dr. Bruno's contrary testimony, and allowed for adequate appellate review. For these reasons, the Board found no error in the WCJ's decision granting the Review Petition and denying the Termination Petition. Employer now petitions this Court for review.[5, 6]

## II.   DISCUSSION

### A.   General Legal Principles

Section 413(a) of the Act authorizes WCJs to modify an NCP if the description of the injury contained therein is incorrect, 77 P.S. § 771,[7] and WCJs are also authorized to expand the description of a work injury to include additional

---

[5] This Court's scope of review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

[6] Employer requested supersedeas from this Court, which we denied by Memorandum Opinion and Order dated May 10, 2022.

[7] Section 413(a) states, relevantly, that "[a WCJ] may, at any time, review and modify or set aside a [NCP] . . . if it be proved that such [NCP] was in any material respect incorrect." 77 P.S. § 771.

injuries, *Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 728 A.2d 902, 902, 904 (Pa. 1999). In a review petition seeking to add an injury, where the causal relationship to the work injury is not obvious, a claimant bears the burden of proving such causal relationship through unequivocal medical evidence. *AT & T v. Workers' Comp. Appeal Bd. (Hernandez)*, 707 A.2d 649, 653 (Pa. Cmwlth. 1998). If the claim is based on an NCP being incorrect when originally issued, the claimant must "establish that a material mistake of fact or law was made at the time the NCP was issued." *Anderson v. Workers' Comp. Appeal Bd. (Pa. Hosp.)*, 830 A.2d 636, 641 (Pa. Cmwlth. 2003).

In contrast, the burden in a termination proceeding is on the employer, which must demonstrate that the claimant has fully recovered from the work-related injuries and can return to their pre-injury position without restrictions or that any remaining disability is unrelated to the work injuries. *Udvari v. Workmen's Comp. Appeal Bd. (US Air)*, 705 A.2d 1290, 1293 (Pa. 1997). Where a claimant has ongoing subjective complaints, termination may be obtained where an employer's medical expert unequivocally testifies that the claimant is fully recovered and can return to work without restriction and there is no objective medical evidence that substantiates the complaints or relates them to the work injury. *Id.* A claimant has no burden of proving anything in a termination proceeding. *Cent. Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

It is well settled that WCJs are the factfinders and "sole arbiter[s] of credibility, and where [their] findings are supported by substantial, competent evidence, we may not disturb them on appeal." *AT & T*, 707 A.2d at 655. As factfinder, a WCJ "is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Greenwich Collieries v. Workmen's Comp.*

8

*Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). However, the legal competency of a medical witness's testimony is a question of law fully reviewable by this Court. *Swigart v. Workers' Comp. Appeal Bd. (City of Williamsport)*, 131 A.3d 117, 119 (Pa. Cmwlth. 2015). "Competency[,] when applied to medical evidence, is merely a question of whether the witness['s] opinion is sufficiently definite and unequivocal to render it admissible." *Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (Plewa)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004). "A medical expert's opinion is not rendered incompetent unless it is **solely** based on inaccurate or false information." *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001) (emphasis in the original). Medical testimony is "unequivocal if the medical witness, after providing a foundation, testifies that, in [the witness's] professional opinion, certain facts exist, or that [the witness] believes or thinks certain facts exist, so long as the medical witness does not recant the opinion or belief first expressed." *AT & T*, 707 A.2d at 653. "Our review [of a medical expert's testimony] must encompass the witness'[s] **entire testimony**, and not merely isolated statements, in reaching our determination." *Swigart*, 131 A.3d at 119 (quoting *Buchanan v. Workmen's Comp. Appeal Bd. (City of Phila.)*, 659 A.2d 54, 56 (Pa. Cmwlth. 1995)) (emphasis in original). With these principles in mind, we turn to the issues raised by Employer.

### B. Competency

Employer first argues the WCJ erred in relying on Ms. Shollenberger's testimony to grant the Review Petition and deny the Termination Petition.[8] Employer's challenge to the legal competency of Ms. Shollenberger's testimony is

---

[8] We have combined Employer's first two issues, which attack the legal competency of Ms. Shollenberger's opinions.

three-fold: she is not a medical doctor; she lacks the foundational education and expertise to differentiate between symptoms related to aplastic anemia and the treatment for that condition and those related to concussions; and she could not testify regarding Claimant's aplastic anemia because it is outside her specialty per the State Board of Nursing's regulations. We address these challenges in turn.

Employer's first challenge focuses on Ms. Shollenberger being a CRNP, not a medical doctor. However, in *Freed*, our Supreme Court reversed its prior decision in *Flanagan v. Labe*, 690 A.2d 183 (Pa. 1997), in which the Supreme Court held that a nurse was precluded from offering opinion testimony as to the identity and cause of a medical condition. In doing so, the Supreme Court explained that

> in the context of legal proceedings, if a witness has any reasonable pretension of specialized knowledge on the relevant subject, [the witness] may be offered as an expert witness, and the weight to be given [that] testimony is for the trier of fact to determine. Rule 702 of the Pennsylvania Rules of Evidence also provides that "a witness qualified as an expert by knowledge, skill, experience, training or education may testify." Pa.R.E. 702.

*Freed*, 5 A.3d 216-17 (citation omitted). Recognizing that "there are any number of ways a nurse might obtain expertise that is beyond the ordinary range of training, knowledge, intelligence, or expertise," the Supreme Court held that "an otherwise competent and properly qualified nurse is not prohibited . . . from giving expert testimony at trial regarding medical causation." *Id.* at 214, 217.

Accordingly, we discern no basis to conclude that Ms. Shollenberger is not "an otherwise competent and properly qualified nurse [who] is not prohibited . . . from giving expert testimony . . . regarding medical causation." *Freed*, 5 A.3d at 214. Notably, Employer did not object to Ms. Shollenberger testifying or otherwise challenge her qualifications during her deposition. And, reviewing those

10

qualifications, which include 40 years working as a registered nurse and CRNP, creating and directing a concussion and head trauma program, and treating 50 patients in that program weekly, there can be no reasonable dispute that Ms. Shollenberger possesses the training and experience necessary to establish that she has a "reasonable pretension to specialized knowledge," particularly on the topics of concussions and head trauma. *Id.* at 216. Thus, the fact that Ms. Shollenberger is not a medical doctor is not dispositive as to her competency to provide testimony regarding the medical causation, as well as scope and continuing nature, of Claimant's work-related head injuries.

Employer next asserts that Ms. Shollenberger's testimony was not legally competent because she did not and could not, due to her lack of medical training and review of Claimant's records, distinguish between a concussion and aplastic anemia as causing Claimant's ongoing symptoms. In this regard, Employer cites *Spotts v. Workmen's Comp. Appeal Bd. (Superior Tube Co.)*, 541 A.2d 446 (Pa. Cmwlth. 1988), to argue a medical witness's lack of knowledge of the underlying diagnosis makes their testimony "equivocal and incompetent as a matter of law." (Employer's Br. at 14.) Employer's arguments assume, however, that Ms. Shollenberger had to address Claimant's aplastic anemia as a potential cause of Claimant's condition and that the failure to review records or inability to treat some alleged alternative diagnosis goes to the competency of the testimony. We agree with the Board, however, that Claimant was not required to disprove that her concussion and post-concussive syndrome, and/or ongoing symptoms, were the result of the aplastic anemia, and that whether Ms. Shollenberger reviewed Claimant's records for her aplastic anemia went to the weight, not legal competency, of Ms. Shollenberger's testimony. (Board Op. at 9.)

11

To meet her burden of proof on the Review Petition, Claimant was required to prove her theory of the scope and nature of her work-related injuries. Claimant sought to establish, through Ms. Shollenberger's testimony, that Claimant sustained a work-related concussion on March 30, 2017, which evolved into post-concussive syndrome, and that Claimant continues to experience symptoms that require treatment. Ms. Shollenberger's credited testimony establishes those facts. Reviewing Ms. Shollenberger's testimony as a whole, that testimony was not "**solely** based on inaccurate or false information," *American Contracting Enterprises, Inc.*, 789 A.2d at 396, and was "sufficiently definite and unequivocal," meaning not based on possibilities, and, is, therefore, legally competent, *Cerro Metal Products*, 855 A.2d at 937; *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 954 (Pa. Cmwlth. 2008).

*Spotts* does not require a different result. In that case, the referee, as WCJs were previously called, accepted as unequivocal the testimony of an employer's medical expert that the claimant did not suffer work-related Trichloroethylene (TCE) poisoning and denied the claimant's claim petition. While the Board affirmed, this Court reversed on further appeal. We held that the referee erred in finding that testimony unequivocal because the medical witness "had never seen a case of acute poisoning from TCE," "had no idea how to recognize a case of TCE poisoning, did not know what [the c]laimant was suffering from, assumed that [the c]laimant was simply faking, and argued that if [the claimant] was not faking [the claimant] was suffering from a disorder which could be related to TCE poisoning." *Spotts*, 541 A.2d at 448-49. This testimony, we concluded, made the witness's opinions, taken as a whole, "interesting but entirely speculative" and equivocal. *Id.* at 449.

12

Unlike the medical witness in *Spotts*, Ms. Shollenberger has the experience and training to recognize a concussion and post-concussive syndrome, she specifically opined that Claimant suffered from those conditions as a result of the March 30, 2017 work incident, and those opinions were not speculative, but based on Claimant's credited history of the incident and symptomology. Further, contrary to the situation here, the employer's expert in *Spotts* was trying to disprove the claimant's alleged cause of his work-related injuries, TCE poisoning, which was supported by the claimant's experts' testimony, and, thus, had to directly address why TCE poisoning could not cause the work-related injuries. Here, Claimant met her burden of proving her theory of the work-related injuries and that her witness did not offer an opinion as to Employer's causal theory went to the weight, not competency, of Ms. Shollenberger's testimony. *Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003).

Finally, Employer appears to argue that Ms. Shollenberger is not qualified or competent to testify as to any topic beyond concussions pursuant to the State Board of Nursing's regulations. The regulation at 49 Pa. Code § 21.251 defines a CRNP as

> [a] professional nurse licensed in this Commonwealth **who is certified** by the [State] Board [of Nursing of the Commonwealth] **in a specialty** and who, while functioning in the expanded role as a professional nurse, performs acts of medical diagnosis or prescription of medical therapeutic or corrective measures in collaboration with a physician licensed to practice in this Commonwealth and in accordance with [The Professional Nursing Law, Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. §§ 211-225.5 (Nursing Law)] and this subchapter. Nothing in this subchapter is to be deemed to limit or prohibit a professional nurse from engaging in those activities which constitute the practice of professional nursing as defined in [S]ection 2 of the [Nursing Law].

49 Pa. Code § 21.251 (emphasis added). Citing this regulation, Employer maintains that Ms. Shollenberger specializes in concussion and head trauma care, and, therefore, is only qualified to testify as to those topics.[9]

Nonetheless, Employer's argument on this basis is predicated on this Court accepting Employer's position that Ms. Shollenberger had to testify about Claimant's aplastic anemia and differentiate symptoms related to that condition from those related to a concussion to be legally competent and unequivocal. As discussed above, we discern no requirement that, to be competent, Ms. Shollenberger had to address Employer's alleged alternative cause of the injury and ongoing symptoms.

###### C. Reasoned Decision

Employer also argues that the WCJ failed to issue a reasoned decision based on substantial competent evidence in the record. Because the WCJ relied on legally incompetent evidence, Ms. Shollenberger's testimony, Employer argues the WCJ "arbitrarily and capriciously disregard[ed] the substantial competent evidence of record," *i.e.*, Dr. Bruno's testimony. (Employer's Br. at 18.) According to Employer, the WCJ failed to recognize Ms. Shollenberger's inadequate qualification under the State Board of Nursing's regulation to testify about Claimant's aplastic anemia. As a result, Employer contends the WCJ failed to render a reasoned decision under Section 422(a).

Claimant asserts the WCJ's decision summarized the evidence presented and made credibility determinations as to that evidence. Further, she argues, the WCJ

---

[9] While we note that there are specialty certifications for CRNPs, there is also an "unrestricted certification" for CRNPs. *See* 49 Pa. Code §§ 21.261(b), .271(c). It is not apparent from the record which type of CRNP certificate Ms. Shollenberger holds.

14

explained the credibility determinations in a way that allows for appellate review of the decision.

Section 422(a) of the Act states, in pertinent part, that

[a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence presented as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. A reasoned decision allows for adequate appellate review, by either the Board or the appellate courts, without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). "A reasoned decision is no more, and no less." *Id.*

On our review, we agree with the Board that the WCJ's decision is reasoned because

the WCJ summarized the testimony of the witnesses and made credibility determinations. [The WCJ] explained the reasons for those credibility determinations, and we were able to determine how [the WCJ's] result was reached. The WCJ's decision allowed for adequate appellate review by the Board.

(Board Op. at 9-10.) The WCJ's decision also allowed for adequate appellate review by this Court. The WCJ "articulat[ed] . . . objective bas[e]s for the credibility determination[s]" made, and those bases are supported by substantial evidence in the

15

record, as is required by the reasoned decision standard. *Daniels*, 828 A.2d at 1053. Moreover, as we have rejected Employer's arguments that Ms. Shollenberger's testimony was not legally competent, and the WCJ credited that testimony over Dr. Bruno's contrary testimony, there was no capricious disregard of Dr. Bruno's testimony. The "express consideration and rejection" of an expert's testimony is, "by definition [] not capricious disregard." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004).

## III. CONCLUSION

Because Ms. Shollenberger's testimony was legally competent, we discern no error in the Board affirming the WCJ's reliance on that testimony to support the grant of Claimant's Review Petition and the denial of Employer's Termination Petition. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Olympus and Sompo America : 
Insurance Company, :
                 Petitioners :
                  :
           v. : No. 38 C.D. 2022
                  :
Dana Eiselen (Workers' Compensation :
Appeal Board), :
               Respondent :

# **O R D E R**

    **NOW**, October 23, 2023, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge